UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JERRY W. TUTTLE,**

        Plaintiff,                       Case No. 2:06-cv-581
                                             JUDGE GREGORY L. FROST
     v.                                    Magistrate Judge Mark R. Abel

**TYCO ELECTRONICS INSTALLATION
SERVICES, INC., et al.,**

        Defendants.

## OPINION AND ORDER

Plaintiff Jerry W. Tuttle brings this action under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, and under Ohio's analogous statute, Ohio Rev. Code §§ 4112.14 and 4112.99.  This matter comes before the Court on the motions for summary judgment of Defendant Tyco Electronic Installation Services, Inc. (Doc. ## 44, 45[1]) and Defendant Aaron Davis (Doc. # 47), and the motion to dismiss and for summary judgment of Defendant Robert Baurhyte (Doc. # 46).  For the reasons that follow, all three motions are **DENIED**.

## I.  FACTS

Plaintiff was employed as a manager with Lucent Technologies in Dublin, Ohio from 1984 until July 2001.  (Doc. # 60, Deposition of Plaintiff at 28-31.)  From 1984 through 1997, Plaintiff's job duties involved providing classrooms with working terminals in Lucent's training center and maintenance on the power room there.  *Id.* at 30.  In 1997, Plaintiff moved into another management position at Lucent that involved supervising telecommunication equipment

---

[1] Defendant Tyco has filed its memorandum in support of its motion separately from its motion.

installers. *Id.* at 30-31.

In 2000, Defendant Tyco entered the telecommunications installation business and purchased the installation division of Lucent Technologies. On August 13, 2001, Plaintiff began working for Tyco as a Level IV Installer and site supervisor. *Id.* at 32. The job duties of a Level IV Installer included the performance of power "transition work." *Id.* Transition work means turning on the power on projects, or, doing "hot work." *Id.*

From 2001 through March 2006, Plaintiff's supervisor was Tom Gavel, and Gavel's supervisor was Bill Petit. *Id.* at 62-63. Plaintiff alleges, and Defendants do not dispute, that his "performance evaluations were always above average, and indicated that Plaintiff's performance exceeded Defendant's expectations." (Doc. # 36 ¶ 14.)

In 2005 and 2006, Tyco's Ohio territory was not doing well financially. (Doc. # 48, Affidavit of Wendy Savage[2] ¶ 3.) Due to these financial difficulties, Tyco terminated Gavel and Petit. *Id.* ¶ 4. Tyco hired Robert Baurhyte as the new regional manager in March 2006 and Baurhyte hired Aaron Davis as the new Ohio manager that same month. (Doc. # 57, Deposition of Aaron Davis at 11-12, 23); (Doc. # 63, Deposition of Robert Baurhyte at 11).

Baurhyte and Davis made the decision to terminate Plaintiff, and, Tyco's Human Resources Department reviewed, approved, and effectuated the decision. (Doc. # 63 at 14-15; 18-19.) Plaintiff was terminated on April 28, 2006, effective May 1, 2006. (Doc. # 60 at 43-44.) On April 11, 2006 Baurhyte drafted a memorandum explaining the reasons for Plaintiff's termination, which included a lack of "sufficient experience" to perform the duties of a Level IV

---

[2]Ms. Savage is a Human Resource Advisor for Tyco. (Doc. # 48 ¶ 12.)

2

Installer. (Doc. # 50, Ex. 10 to Affidavit of Robert Baurhyte.[3]) Specifically, Defendants contend that Plaintiff either would not or could not perform power transition work. *Id.*

Plaintiff contends that he was terminated because of his age, which was 58 years old at the time of his termination. (Doc. # 36 ¶ 17.) Plaintiff alleges that he has worked in the telecommunication installation business for thirty-six years and that he was qualified to perform his job as a Level IV Installer which he had been performing for five years. (Doc. # 60 at 27-28.) Plaintiff asserts that Davis and Baurhyte openly discussed their intentions to replace older workers with younger ones from the beginning of their employment with Tyco. Plaintiff submits deposition testimony from Tyco employees who testify that Baurhyte and Davis each spoke many times of "needing to get rid of the older people" and the need to get "young" people or "young blood" to replace them. (Doc. # 61, Deposition of George Maney at 22-25; Doc. # 62, Deposition of Lois Ersfeld at 25-32.)

After Plaintiff's termination, there were seven installers in the Ohio territory; three of these installers were older in biological age than Plaintiff, *i.e.*, 64, 65, and 65 years old. (Doc. # 48 ¶ 6.)

On July 12, 2006 Plaintiff brought this action and on July 20, 2007 Plaintiff filed the Second Amended Complaint (Doc. # 36), alleging that he was terminated because of his age in violation of the ADEA and Ohio law.

---

[3]In Plaintiff's memorandum in opposition to Defendants' motions for summary judgment, Plaintiff misconstrues the meaning of the metadata attached to this termination memorandum, claiming that it shows the memorandum was not created on April 11, 2006. Plaintiff, however, is mistaken. The uncontroverted evidence shows that the memorandum was created on April 11, 2006, and was last modified on the same date thirty eight minutes and fifty seconds after it was created. Further, the memorandum was also sent to and received by Tyco's human resources department that same day. (Doc. # 64, Ex. 3 to the Deposition of Wendy Savage; Doc. # 63 at 47.)

On August 30, 2007 Tyco filed its motion for, and its memorandum in support of, summary judgment.  (Doc. ## 44, 45.)  On that same day, Davis filed his motion for summary judgment (Doc. # 47) and Baurhyte filed his motion to dismiss and for summary judgment (Doc. # 46).  Tyco, Davis and Baurhyte all move for summary judgment on Plaintiff's claim of age discrimination.  Baurhyte also moves to be dismissed from this action based on lack of this Court's personal jurisdiction over him.

On September 24, 2007, Plaintiff filed his combined memorandum in opposition to all three of Defendants' dispositive motions.  (Doc. # 65.)  On October 9, 2007, Tyco, Davis, and Baurhyte filed their combined reply in support of their dispositive motions (Doc. # 70) and on that same day, Baurhyte filed a supplemental reply addressing only personal jurisdiction (Doc. # 73).

## II.  BAURHYTE'S MOTION TO DISMISS

**A.  Applicable Standard**

A plaintiff has the burden of showing personal jurisdiction when there is a motion to dismiss for a lack of personal jurisdiction filed pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  *Int'l Tech. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997).  When there is a motion to dismiss for lack of personal jurisdiction and no hearing is conducted, "the court must consider the pleadings and affidavits in a light most favorable to the plaintiff.  To defeat such a motion, the plaintiff need only make a *prima facie* showing of jurisdiction."  *Rothschild Berry Farm v. Serendipity Group*, LLC, 84 F. Supp.2d 904, 905 (S.D. Ohio 1999) (punctuation omitted) (citation omitted).  *See also Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1272 (6th Cir. 1998) (same).

A court may exercise personal jurisdiction if the state's long-arm statute reaches the defendants and the exercise of jurisdiction comports with federal due process. *Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996) ("The Due Process Clause requires that the exercise of personal jurisdiction in each case comport with "traditional notions of fair play and substantial justice." quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). In some states, the long-arm statute reaches as far as due process permits. The Ohio Supreme Court, however, has determined that Ohio's long-arm statute is not coextensive with due process, and therefore, determining the existence of personal jurisdiction requires analysis under both Ohio's long-arm statute and federal due process. *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 235 (1994); *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998).

A plaintiff can show either general or specific jurisdiction. To show general jurisdiction, a plaintiff must show the defendant has "continuous and systematic" contact with the forum state. To show specific jurisdiction, a plaintiff must show "the defendant purposefully established 'minimum contacts' in the forum state." *Nationwide Mutual*, 91 F.3d at 794 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985)).

**B.  Personal Jurisdiction**

To determine whether personal jurisdiction exists, the Court turns first to the question of whether it may exercise personal jurisdiction over Baurhyte for actions that he performed as an employee or officer of Tyco. Baurhyte argues that this Court is precluded from exercising personal jurisdiction over him based upon the fiduciary shield doctrine. This Court, however, disagrees.

The fiduciary shield doctrine generally prevents the exercise of personal jurisdiction over

a corporate fiduciary whenever an out-of-state individual's contacts with the forum state occur by virtue of his or her acts as a fiduciary. *Balance Dynamics Corp. v. Schmitt Indus. Inc.*, 204 F.3d 683, 697-98 (6th Cir. 2000) ("if an individual has contact with a particular state only by virtue of his acts as a fiduciary of the corporation, he may be shielded from the exercise, by that state, of jurisdiction over him personally on the basis of that conduct." quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 902 (2d Cir. 1981)). As this Court has explained:

> Under Sixth Circuit case law, however, the fiduciary shield doctrine does not prohibit a court from exercising personal jurisdiction over corporate officers where the officers were personal, active participants in allegedly tortious or violative conduct. *Balance Dynamics Corp.*, 204 F.3d at 697-98 (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir 1974)) (holding that "the mere fact that the actions connecting defendants to the state were undertaken in an official rather than personal capacity does not preclude the exercise of personal jurisdiction over those defendants"); *see Serras v. First Tennessee Bank N.A.*, 875 F.2d 1212, 1217 (6th Cir.1989); *Chattanooga Corp. v. Klingler*, 704 F.2d 903, 906-07 (6th Cir.1983).

*Franklin Publ'ns, Inc. v. General Nutrition Corp.*, Case No. 2:05-cv-1061, 2007 U.S. Dist. LEXIS 63001, *12 (S.D. Ohio Aug. 27, 2007).

Here, Baurhyte is a fiduciary of Tyco. *See Groob v. Keybank*, 108 Ohio St.3d 348, 351 (2006) (a fiduciary is a "person having a duty, created by his undertaking, to act primarily for the benefit of another in matters connected with his undertaking"). Further, Plaintiff alleges that Baurhyte engaged in tortious conduct when he exhibited discriminatory age bias during the weekly telephone conferences with individuals in Ohio and when his decisions directly effect employees in Ohio. When such an allegation is made, it is immaterial that Baurhyte was acting in a official capacity when his actions reached into Ohio. *See e.g.*, *Franklin Publ'ns, Inc.*, *supra*. Thus, the fiduciary shield doctrine does not preclude this Court from exercising personal jurisdiction over Baurhyte.

6

This Court turns now to whether the requirements of Ohio's long-arm statute are met.

Ohio's long arm statute reads in relevant part:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action from the person's:

(1) Transacting any business in this state; . . .

Ohio Rev. Code § 2307.382(A)(1).

In the instant action, Baurhyte transacted business in Ohio and those transactions gave rise to the age discrimination claims alleged against him. Consequently, the requirements of Ohio's long arm statute are met.

Next, this Court analyzes whether constitutional due process presents a limitation on the exercise of personal jurisdiction over Baurhyte. "The Due Process Clause requires that the exercise of personal jurisdiction in each case comport with 'traditional notions of fair play and substantial justice.' " *Nationwide Mutual*, 91 F.3d at 793 (citing *International Shoe Co.*, 326 U.S. at 316 which quoted *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). "In broad terms, the assertion of personal jurisdiction satisfies due process if 'the defendant purposefully avails itself of the privilege of conducting activities within the forum State,' *Hanson v. Denckla*, 357 U.S. 235, 253 (1958), such that it 'should reasonably anticipate being haled into court there.'" *Id.* (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). In this case, Baurhyte was a regional manager who supervised all of the employees for Tyco in the state of Ohio. His decisions could, and in fact did, reach into Ohio and change the employment status of an Ohio resident. Certainly, Baurhyte should have reasonably anticipated being hailed into court there.

However, even if Baurhtye had not purposely availed himself to business activities in

Ohio, this Court would still have authority to exercise personal jurisdiction over him based on specific jurisdiction, which "often may be premised on a single act of the defendant." *Id.* (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 222 (1957)). "The nature and quality of the act, as well as the circumstances surrounding its commission, must be examined to determine whether personal jurisdiction exists in each case." *Id.* (citing *International Shoe*, 326 U.S. at 318). In all questions of personal jurisdiction, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum state." *Id.* (citing *Burger King*, 471 U.S. 462 at 474 which quoted *International Shoe*, 326 U.S. at 316). Here, viewing the evidence in the light most favorable to Plaintiff as required, *Rothschild Berry Farm*, 84 F. Supp.2d at 905, the Court concludes that the nature and quality of Baurhyte's contacts with Ohio are sufficient to establish specific jurisdiction.

Accordingly, this Court may properly exercise personal jurisdiction over Baurhyte.

### III.  MOTIONS FOR SUMMARY JUDGMENT

**A.  Applicable Standard**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The trial court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Products, Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the district court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

## B. Age Discrimination

Under the ADEA, it is "unlawful for an employer . . . [to] discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To establish a claim of age discrimination under the ADEA, Plaintiff may either introduce direct evidence of discrimination or circumstantial evidence that would support an inference of discrimination. *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1081 (6th Cir. 1994); *Siemer v. Comet N. Am.*, 467 F. Supp.2d 781, 787 (S.D. Ohio 2007). The same evidentiary framework applies to

discrimination claims brought under the state law of Ohio.[4] *Siemer*, 467 F. Supp.2d at 787 (citing *Allen v. Ethicon, Inc.*, 919 F. Supp. 1093, 1098 (S.D. Ohio 1996)). *See also* Ohio Rev. Code § 4112.14 (prohibiting an employer from "discharging without just cause any employee aged forty or older who is physically able to perform the duties and otherwise meets the established requirements of the job").

While the ADEA does not provide for individual liability, the Supreme Court of Ohio has interpreted the term "employer" as it is used in the Ohio Revised Code Chapter 4112 to mean individual supervisors and managers. *See Genaro v. Central Transport, Inc., et al.*, 84 Ohio St.3d. 293, 300 (1999) ("supervisors and managers are accountable for their own discriminatory conduct occurring in the workplace environment"). Thus, Plaintiff has sued Davis and Baurhyte only under the law of Ohio.

Plaintiff argues that he has raised a genuine issue of material fact regarding age discrimination under both direct and indirect evidence theories.

**1. Direct Evidence Theory**

A "direct evidence" discrimination case requires proof "which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 926 (6th Cir. 1999). "Consistent with this definition, direct evidence of discrimination does not require a factfinder to draw any inferences in order to conclude that the challenged employment action

---

[4] Ohio law, however, offers a slightly different definition of "direct evidence," declining to adopt the definition from federal court jurisprudence which encompasses explicit discriminatory statements. *Bush v. Dictaphone Corp.*, 161 F.3d 363, 369-70 (6th Cir. 1998) (citing *Mauzy v. Kelly Servs. Inc.*, 75 Ohio St. 3d 578 (Ohio 1996)). This difference is inconsequential in the instant action.

was motivated at least in part by prejudice against members of the protected group." *Johnson v. Kroger Co.*, 319 F.3d 858, 865 (6th Cir. 2003). *See also Rowan v. Lockheed Martin Energy Systems, Inc.*, 360 F.3d 544 (6th Cir. 2004) ("Direct evidence is evidence that proves the existence of a fact without requiring any inferences.").

In the case at bar, Plaintiff submits deposition testimony of Lois Ersfeld, an operations coordinator for Tyco, who states that from March 2006 through October of 2006 she heard Baurhyte make statements about "needing to get rid of the older people" and that "we needed to bring the young people in, get rid of the olders, older people . . . pretty constantly," and "very, very frequently" or "at least a dozen times." (Doc. # 62 at 27-32.) Also, Plaintiff submits the deposition testimony of George Maney, a Tyco area manager for Indiana who was employed by Tyco through 2006. Maney testified that he heard Baurhyte state a couple of times or so, in approximately March 2006, that "we got to get rid of some of these older installers and get new young people in." (Doc. # 61 at 22.) Further, around this same time period, both Maney and Ersfeld were told by Baurhyte that an Indiana employee was not going to be promoted because he "was old." (Doc. # 61 at 22; Doc. # 62 at 32.)

Further, with regard to Davis, Plaintiff submits these same employees' testimony to support his claim of age discrimination. Maney testified that in March and April 2006 Davis told him that "we got too many older people and we got to get young people in here." (Doc. # 61 at 23-25.) Ersfeld testified that in March and April of 2006 she heard Davis state that he wanted to fire all of the Ohio installers and bring on his own team because Tyco "should have, quote, young blood." (Doc. # 62 at 25-26.) Ersfeld avers that Davis spoke about getting young blood in as Ohio installers "on several of the [conference] phone calls and then quite a number of times

11

on the phone with [Ersfeld] . . . . I'd say a good six, seven, eight times" from March 2006 through September or October of 2006. *Id.* at 28-29.

The United States Court of Appeals for the Sixth Circuit recently noted "that there exists some tension in the law in this circuit" related to whether comments such as those at issue here constitute direct evidence of discrimination *Blair v. Henry Filters, Inc.*, 505 F.3d 517, 525 (6th Cir. 2007). The *Blair* court reviewed the law that presented the conflict and concluded:

> We need not resolve this conundrum here. As shown below, even if we apply the circumstantial-evidence test, it is clear that [Defendant employer] was not entitled to summary judgment.

*Id.* at 526 (reviewing *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544 (6th Cir. 2004); *Talley v. Bravo Pitino Restaurant, Ltd.*, 61 F.3d 1241 (6th Cir. 1995), and *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004)). In the instant action, this Court is faced with analogous circumstances as was the *Blair* court, and, like the *Blair* court, this Court declines to resolve the problem here because it is clear that Defendant is not entitled to summary judgment under the circumstantial evidence test applied below.

**2. Indirect Evidence Theory**

An "indirect evidence" discrimination case is analyzed under the familiar *McDonnell Douglas* burden shifting framework, which requires a plaintiff to establish a *prima facie* case of discrimination at the outset. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). A plaintiff can meet this burden by showing that (1) he was a member of a protected class; (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) a person outside the protected class was treated more favorably than him. *See Manzer*, 29 F.3d at 1081 (citing *McDonnell*

*Douglas*, 411 U.S. at 802).

Once a plaintiff establishes a *prima facie* case, the employer is faced with a "burden of articulation" and must set forth "some legitimate non-discriminatory reason for the employee's discharge." *Braithwaite v. Timken Co.*, 258 F.3d 488, 493 (6th Cir. 2001) (citing *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1329 (6th Cir. 1994)). If, however, the defendant proffers such a justification, while an inference of discrimination may still be drawn from the plaintiff's *prima facie* evidence, the mandatory presumption of discrimination drops from the case. *See Burdine*, 450 U.S. at 255 n.10. It then falls on the plaintiff to rebut the defendant's proffered justification.

To raise a genuine issue of material fact about the credibility of an employer's explanation for the adverse action, the plaintiff is required to produce evidence from which a reasonable jury could infer that the defendant's legitimate, non-discriminatory reason is pretextual. *See Hicks*, 509 U.S. at 507. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times on the plaintiff." *Id.* (quoting *Burdine*, 450 U.S. 248, 255 n.8).

### a.  Plaintiff's *prima facie* case

For purposes of summary judgment, Defendants do not dispute that Plaintiff's age places him in a protected class, that he was replaced by a younger person, and that he suffered an adverse employment action. Instead, Defendants argue that Plaintiff has failed to raise a genuine issue of material fact as to whether he was qualified for his position as a Level IV Installer. This Court, however, disagrees.

The burden of establishing a *prima facie* case of discrimination is relatively light under

13

the *McDonnell Douglas/Burdine* paradigm. *See Barker v. Scovill, Inc.*, 6 Ohio St.3d 146, 451 N.E.2d 807 (1983); *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000). In *Cline*, the Sixth Circuit "cautioned that district courts must not use the 'qualified' element of the *prima facie* case to heighten the plaintiff's initial burden." *Id.* at 660. "In an effort to ensure that the first two stages of the *McDonnell Douglas* inquiry remain analytically distinct, and that a plaintiff's initial burden not be too onerous, [the *Cline* court] held that the 'qualified' prong of the *prima facie* case must be evaluated in light of the plaintiff's employment record 'prior to the onset of the events that the employer cites as its reason' for its decision." *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 473 (6th Cir. 2002) (citing *Cline*, *supra*, at 662-3). *Cline* "further instructed that the legitimate non-discriminatory reason offered by the employer at the second stage of the *McDonnell Douglas* inquiry may not be considered in determining whether the employee has produced sufficient evidence to establish a *prima facie* case. *Id.* (citing *Cline*, *supra*, at 660-1).

In the case *sub judice*, Defendants argue that Plaintiff was terminated because he is not qualified to perform "hot work," which is required of a Level IV Installer. However, in evaluating whether Plaintiff has established a *prima facie* case, this Court cannot consider defendants' articulated reason for terminating Plaintiff, and instead, must only evaluate Plaintiff's employment record "prior to the onset of the events that the employer cites as its reason" for its decision. *Cline*, *supra*, at 662-3. It is uncontroverted that Plaintiff worked in the electronic installation industry for thirty-six years and that for the five years prior to his termination, Plaintiff received above-average reviews as a Level IV Installer. While it is true that the manager who evaluated Plaintiff was terminated, this Court must still evaluate Plaintiff's performance prior to his termination, must take the evidence in the light most favorable to

14

Plaintiff, and must make all inferences in his favor. Under these dictates, the Court concludes that Plaintiff has raised a material issue of fact as to whether he is qualified to perform Level IV Installation work.

### b. Defendants' legitimate non-discriminatory reason for termination and pretext

As stated above, Defendants have articulated a legitimate non-discriminatory reason for Plaintiff's termination, *i.e.*, unacceptable performance. Because Defendants have articulated a legitimate non-discriminatory reason for their action, the burden shifts back to Plaintiff to demonstrate that Defendants' reason is pretextual. "Generally, to show pretext, a plaintiff must demonstrate 'that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct.' " *Blair v. Henry Filters, Inc.*, 505 F.3d at 532 (6th Cir. 2007) (citing *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (*en banc*) which quoted *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)).

To evaluate whether a plaintiff has created a genuine issue of material fact as to pretext, this Court may examine the evidence Plaintiff produced to establish a *prima facie* case, evidence discrediting Defendants' proffered reason for terminating Plaintiff, as well as any additional evidence Plaintiff chooses to put forth. *Id.* The Sixth Circuit recently explained:

> Under the logic of *St. Mary's Honor* [*Ctr. v. Hicks, 509 U.S. 502 (1993)*]*,* and *Reeves* [*v. Sanderson Plumbing Products, Inc., 530 U.S. 133 (2000)*], to survive summary judgment a plaintiff need only produce enough evidence to support a *prima facie* case and to rebut, but not to disprove, the defendant's proffered rationale. "The key question is always whether, under the particular facts and context of the case at hand, the plaintiff has presented sufficient evidence that he or she suffered an adverse employment action under circumstances which give rise to an inference of unlawful discrimination." *Macy v. Hopkins Cty. Sch. Bd.*, 484 F.3d 357, 365 (6th Cir. 2007) (citing [*Tex. Dep't of Cmty. Affairs v.*] *Burdine*,

      450 U.S. [248, 253 (1981)].

*Blair*, 505 F.3d at 532-33 ("We thus hold that [the plaintiff] did not need to produce additional evidence to support a finding of pretext; the evidence that he produced in support of his *prima facie* case may, but will not necessarily, suffice to show a genuine issue of material fact concerning pretext and thus to survive summary judgment.").

      As discussed previously with respect to the third prong of the *prima facie* case, Plaintiff has offered sufficient circumstantial evidence to create a genuine issue of material fact as to whether he was qualified for his job. Further, Plaintiff has offered literally dozens of statements from the decision-makers, Baurhyte and Davis, from which one may infer that Plaintiff's termination "was motivated at least in part by prejudice against members of the protected group." *See Kroger Co.*, 319 F.3d at 865. The fact that not all installers Plaintiff's age and older were terminated at the time Plaintiff was does not eliminate this inference. Moreover, all of these comments were made close to Plaintiff's termination, which lends evidentiary weight to them. *Rosso v. The A.I. Root Co.*, 97 Fed. Appx. 517, 520 (6th Cir. 2004) (stating that the closer the adverse employment action is to the comments made, the more weight such comments carry).

      This circumstantial evidence of age discrimination, viewed in the light most favorable to Plaintiff, would permit a reasonable factfinder to conclude that Defendants' proffered non-discriminatory reason for terminating Plaintiff was pretextual. Thus, Plaintiff has met his burden of raising a genuine issue of material fact as to whether Defendant's proffered reason for terminating him was pretext for age discrimination.

## IV.  CONCLUSION

      Based on the foregoing, the Court **DENIES** Tyco's Motion for Summary Judgment (Doc.

# 44), Aaron Davis' Motion for Summary Judgment (Doc. # 47), and Robert Baurhyte's Motion to Dismiss and for Summary Judgment (Doc. # 46).

    **IT IS SO ORDERED**.

                         **/s/ Gregory L. Frost**
                          **GREGORY L. FROST**
                          **UNITED STATES DISTRICT JUDGE**